# IN THE COURT OF APPEALS OF IOWA

No. 24-1209
Filed October 30, 2024

**IN THE INTEREST OF I.T., S.T., and T.T.,**
**Minor Children,**

**A.T., Mother,**
　　Appellant.
_____

Appeal from the Iowa District Court for Polk County, Susan Cox, Judge.


A mother appeals the termination of her parental rights. **AFFIRMED.**


Nancy L. Pietz, Des Moines, for appellant mother.

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellee State.

Nicole Garbis Nolan of Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.


Considered by Schumacher, P.J., and Ahlers and Badding, JJ.

**AHLERS, Judge.**

The juvenile court terminated a mother's parental rights to three of her children. The mother appeals.[1] She challenges the statutory grounds authorizing termination, contends the Iowa Department of Health and Human Services failed to make reasonable efforts toward reunification, argues termination is not in the children's best interests, claims the juvenile court should have applied a permissive exception to preclude termination, and requests additional time to work toward reunification.

We conduct a de novo review of orders terminating parental rights. *In re Z.K.*, 973 N.W.2d 27, 32 (Iowa 2022). The juvenile court's fact findings do not bind us, but we give them weight, especially in assessing witness credibility. *Id.* Our review follows a three-step process to determine if a statutory ground for termination has been satisfied, whether termination is in the child's best interests, and whether any permissive exception should be applied to preclude termination. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). After addressing any challenged steps, we then consider any additional claims raised by a parent. *In re J.K.-O.*, No. 24-0678, 2024 WL 3290381, at *1 (Iowa Ct. App. July 3, 2024).

As to the statutory grounds authorizing termination, the juvenile court found grounds satisfied under Iowa Code section 232.116(1)(f) (2023) with respect to the

---

[1] The mother consented to the termination of her parental rights to her oldest child. She does not appeal the termination of her rights to that child.

The juvenile court also terminated the parental rights to the children's fathers. The father of the youngest child previously appealed, and this court affirmed the termination of his parental rights. *In re T.T.*, No. 24-0552, 2024 WL 4223397, at *3 (Iowa Ct. App. Sept. 18, 2024). This appeal only addresses the mother's parental rights.

two older children and section 232.116(1)(h) with respect to the youngest child. These two grounds for termination are similar. Both require the child to be previously adjudicated as in need of assistance and for the court to find the child could not be returned to the parent's custody at the time of the termination hearing; they differ only with respect to age of the child at issue and the length of time the child must be removed from the parent's custody. *Compare* Iowa Code § 232.116(1)(f), *with id.* § 232.116(1)(h). Under these statutory grounds, the mother only challenges whether the children could be safely returned to her custody at the time of the termination hearing. *See id.* § 232.116(1)(f)(4), (h)(4); *In re A.M.*, 843 N.W.2d 100, 112 (Iowa 2014) (holding that "at the present time" means at the time of the termination hearing).

We agree with the juvenile court that the children could not be safely returned to the mother's custody. This mother first had contact with the department in 2016, over concerns relating to her oldest child. The department became involved with this family again in August 2021 over concerns that the mother and her paramour were exposing the children to marijuana, cocaine, and methamphetamine. She tested positive for methamphetamine in October 2022.

The mother eventually entered in-patient treatment at the House of Mercy in November 2022. In February 2023, the mother wrote to the juvenile court expressing "deep regret and remorse for [her] reckless and dangerous behaviors" and taking "full accountability for all of the positive drug patches and hair samples," conceding her drug use "put [her] children in danger." In response to the mother's admissions and apparent treatment progress, the juvenile court granted the mother additional time to work toward reunification.

The treatment progress was short-lived, as the mother tested positive for cocaine in June. Despite the positive test, the mother convinced her physician and therapist that the test had been contaminated and was a false positive. They even testified to that effect while the mother did nothing to correct them. Months later, the mother admitted that the test was actually accurate and that she had used cocaine in June.

The juvenile court held a two-day termination hearing in December. The mother testified, as did her new therapist. The therapist explained that substance-use addicts are not in active recovery when they continue to lie and deceive those around them. By March 2024, the juvenile court had not entered a ruling, so the mother filed a motion to reopen the record to present evidence of her progress. The juvenile court granted the motion, and the termination hearing was reopened in May.

But the reopened hearing did not go as the mother had hoped, as the evidence presented showed that she had regressed. She had stopped taking medication for her depression and had no plans on how she would treat her symptoms moving forward. When questioned about whether she had been in a relationship with anyone, the mother denied any such relationship. After several denials and deflections in response to questions about it, the mother eventually admitted that she had been in a sexual relationship with another resident of the House of Mercy. She admitted that she did not tell her therapist about the relationship. She also admitted that the relationship violated the House of Mercy rules because it would impede her and her paramour's ability to focus on the treatment program.

After reviewing the record in this case, which has been open for more than two years, we conclude the mother has not tackled her substance-use and other problems. Evidence established that an addict is not in recovery when the addict continues to deceive others about use and progress. It is apparent that the mother has gained little insight and is just going through the motions rather than making any meaningful progress in her recovery. The record shows that rather than modifying her troubling behavior, the mother has simply refined her ability to deceive those around her to conceal her behavior. She claims to accept responsibility for her actions, but when pressed, she reverts to casting blame on others. This refusal to meaningfully accept responsibility threatens her sobriety. It also indicates, as established by the evidence, that she is not in recovery. And given the mother's latest revelation, we question whether the mother will even be allowed to remain at the House of Mercy and participate in its treatment program. We conclude that the mother could not safely assume custody of the children at the time of the termination hearing.

The mother contends that the department failed to make reasonable efforts toward reunification. While not a strict substantive requirement for termination, "[t]he State must show reasonable efforts [toward reunification] as part of its ultimate proof that the child[ren] cannot be safely returned to the [custody] of a parent." *In re L.T.*, 924 N.W.2d 521, 527 (Iowa 2019) (first alteration in original). As this implicates the fourth element under section 232.116(1)(f) and (h), we must address the mother's reasonable-efforts argument before reaching an ultimate determination of whether the State established these grounds for termination.

The mother complains that visitation did not progress as she requested. She contends the visitation granted to her did not provide adequate opportunities for her to "show improved parenting skills and bonds with her children." We generally agree with the mother that visitation is an important service to provide families as they work toward reunification. However, we conclude that the visitation in this case was adequate. More visits would have been better, but they were not required in this case. *Cf. In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (noting the nature of the reasonable-efforts requirement varies depending on the circumstances of each case). Additional services requested by a parent must relate to the ongoing need for removal and remedy that need. *See In re M.G.*, No. 18-0650, 2018 WL 3912192, at *2 (Iowa Ct. App. Aug. 15, 2018). Here, the main barriers to reunification related to the mother's illegal substance use and continued deception. That barrier to reunification would not have been resolved through additional visitation. We therefore reject the mother's reasonable-efforts challenge and conclude the State has established a statutory ground for termination.

Next, the mother argues termination is not in the children's best interests. When making a best-interests determination, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (quoting Iowa Code § 232.116(2)).

The mother argues that termination cannot be in the children's best interests because the youngest child is placed in a different home than the older two children

and they would be reunited with each other if returned to her custody. We recognize that if the children could be returned to her custody, they would be reunited with one another. *See In re L.A.*, No. 14-1145, 2014 WL 6682341, at *3 (Iowa Ct. App. Nov. 26, 2014) (recognizing the significance of sibling bonds when reaching a best-interests determination). But these children cannot be safely returned to the mother's custody. The children need a safe caregiver who considers their emotional and developmental needs as paramount. This mother has demonstrated she will prioritize her wants and desires before the needs of those who are dependent on her. We believe these children will be best served through termination and adoption.

The mother also argues that the juvenile court should have applied a permissive exception to preclude termination. It was her burden to prove that an exception should be applied. *In re A.S.*, 906 N.W.2d 467, 475–76 (Iowa 2018). The mother points to her bonds with the children as a basis for forgoing termination. Section 232.116(3)(c) gives the court discretion to forgo termination when the bond between parent and child is so strong that "termination would be detrimental to the child." The mother did not meet her burden of establishing bonds of such magnitude by clear and convincing evidence. *See* Iowa Code § 232.116(3)(c) (requiring proof of the exception by "clear and convincing evidence"); *In re A.B.*, 956 N.W.2d 162, 169 (Iowa 2021). The visitation supervisor explained that the mother "doesn't interact with [the children] for most of the visit[s]" and the children just want to go to visits so that they can use electronic devices available during the visits. This is not indicative of bonds so strong that their

severance would be detrimental to the children. Like the juvenile court, we decline to apply section 232.116(3)(c) to avoid termination of the mother's rights.

Finally, we address the mother's request for additional time to work toward reunification. The court may grant a parent six additional months to work toward reunification in lieu of termination under certain circumstances. *See* Iowa Code § 232.117(5) (permitting the court to enter a permanency order pursuant to section 232.104 if it does not terminate parental rights); *see also id.* § 232.104(2)(b) (providing a permanency option of giving an additional six months to work toward reunification). But before the court may grant a parent such additional time, it must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child from the child's home will no longer exist at the end of the additional six-month period." *Id.* § 232.104(2)(b).

This mother has already been granted additional time, and she squandered that opportunity. The juvenile court reopened the termination record months after the initial hearing to be informed of the mother's progress, only to learn that the mother had made none and appeared in a worse position than before. We have no reason to believe anything would be different if the mother were given yet another opportunity to work toward reunification. Time has run out. These children need and deserve permanency, and we will not delay that any longer. We do not grant the mother any additional time to work toward reunification. That said, we join in the juvenile court's hope that the mother continues to work on herself

because she is "worthy of good things in this lifetime" and "wish [her] nothing but the best of luck."

**AFFIRMED.**